## W. B. ALSOBROOK *v.* W. H. EGGLESTON ET AL.

69    833
79    304

69    833
d86   613
86    615₁

69    833
e91   527

1. DECREE FOR PARTITION.  *Conclusiveness as to title.  Parties and privies.*

   A decree for the sale of land for partition, which fixes the interests of the parties, is conclusive as to such interests, as between the parties and their privies, although the decree is never executed by a valid sale of the land.

2. JUDICIAL SALE.  *Failure by commissioner to follow decree.  Case.*

   Where a decree, rendered in 1862, required a sale of lands upon a credit of six months, with bond and security for the purchase-price, but the commissioner sold for cash, accepting in payment Confederate money, which he withheld with his report until after the close of the war, the sale was invalid, and the purchaser, being bound to take notice of the commissioner's disregard of the decree, acquired no title.

3. SAME.  *Confirmation in pais.  Evidence not sufficient.*

   In such case the purchaser, without waiting for confirmation, and without recording the deed, went into possession of the land, which was uncultivated, and cleared a small part of it.  The report of sale was excepted to by defendants, and no further step was taken in the case.  In 1886 such purchaser also bought a half-interest of the complainant, and received a deed, which he recorded.  It was not shown that, after the exceptions to the report, he claimed any interest under the decree.  *Held,* the facts do not show a confirmation of the sale by the act of the parties.

4. COMMISSIONER'S SALE.  *Exceptions to report.  Abandonment.  Presumption.*

   No presumption in favor of such purchaser's title arose from the fact that exceptions were filed to the report of sale, and that no further step was taken in the case.  The inference is that the sale, rather than the exceptions was abandoned.

69 MISS.—53

5. CO-TENANCY.   *Ouster.   Adverse possession.   Notice to co-tenant.*

> The purchase of the half-interest of the complainants in said suit, being
> made after exceptions to the report of sale were filed, will be construed
> as a recognition of the title of defendants to the other half-interest, and
> the possession of such purchaser, being thereafter lawful as against the
> defendants, will not be adverse until notice to them of his hostile claim;
> nor will a previous entry and deadening of the timber on a small part
> of the land, and the erection of two cabins thereon, be construed as an
> ouster, this being merely in expectation of a confirmation of the sale.

FROM the chancery court of Tallahatchie county.

HON. W. R. TRIGG, Chancellor.

The land, for a partition of which the bill in this case is
filed, was originally owned by Armistead Payne and W. B.
Alsobrook, the ancestor of complainant. They purchased
jointly, but took the title in the name of Payne. In 1862,
after the death of Alsobrook, Payne filed a bill against the
heirs of Alsobrook, who were then minors, in which he stated
the true condition of the title, and prayed for a sale of the
land for partition. The heirs of Alsobrook appeared by a
guardian *ad litem*, and a decree was rendered for a sale of the
land. By the decree one Davidson was appointed commis-
sioner, and was directed to sell the land upon a credit of six
months, taking the bond of the purchaser therefor, with suf-
ficient security. He was further directed, out of the proceeds
of the sale, to pay the costs, and report the balance to the
court for distribution. The commissioner proceeded the
same year to make the sale, and William C. Eggleston be-
came the purchaser. But the commissioner, instead of tak-
ing the note of Eggleston, payable in six months, with good
security, accepted the entire amount of his bid in Confeder-
ate money, and executed to Eggleston a deed. Eggleston at
once entered upon the land, which was uncultivated, and
deadened the trees upon about one hundred acres, and, in
1863, built two cabins thereon, which he rented. There is
evidence that he claimed the land continuously after that
time, and he regularly paid the taxes, but the commissiouer's

deed to himself was not recorded.   The commissioner made no report of the sale until 1866, when he filed a report, stating the action he had taken, and brought into court the Confederate money which he had accepted in payment for the land.   Exceptions to said report were promptly filed in behalf of the defendants, and, so far as the record discloses, no further step was ever taken in that partition suit.

In 1866 Eggleston purchased the half-interest of Payne in the land, and received from him a deed, which he placed upon record.

It is not shown that the heirs of Alsobrook had any knowledge that Eggleston claimed the entire land adversely to them, but it is shown that he continued to pay taxes on all of it, and in 1880 he sold forty acres of the land, which he had cleared, to one Wade.

The bill in this case was filed October 12, 1889, by the heirs of W. B. Alsobrook against the heirs of Eggleston, seeking a partition of the lands.   The answer denied the title of complainants, and asserted exclusive ownership in the defendants by virtue of the above-mentioned commissioner's deed and long-continued adverse possession thereunder.   The answer also set up the purchase, in 1886 and 1887, of tax-titles to the land, but, since the court finds that Eggleston was a co-tenant with the heirs of Alsobrook, it follows that Eggleston could not avail of the tax-titles.

Upon the foregoing facts, deduced from the pleadings and the evidence, the court decreed in favor of the defendants, and dismissed the bill, and from this decree the complainants have appealed.

*W. B. Marshall* and *W. S. Eskridge*, for appellants.

Eggleston, by his purchase in 1866 of the half-interest of Payne, became a tenant in common with the complainants. His possession after that was not adverse.   The sale by Davidson, the commissioner, was void, and it is evident that Eggleston so regarded it.   This is apparent from his own

conduct, for he never placed the deed upon record, but, on the contrary, purchased the half-interest of Payne, the complainant in that partition proceeding. He is estopped to deny the title of complainants.

'There was never any ouster by Eggleston of the complainant. The temporary occupancy of the land after 'his purchase was not adverse, and did not continue for ten years.

*R. H. Golladay*, for appellees.

The exceptions to the report of sale were abandoned. More than twenty years afterwards the same parties filed an original bill for partition. After such a time, confirmation of sale will be presumed. *Johnson* v. *Cooper*, 56 Miss., 608; *Redus* v. *Hayden*, 43 Miss., 613; *Gowan* v. *Jones*, 10 Smed. & M., 164.

Eggleston entered under the commissioner's deed in 1862, and continuously held, claiming title, thereafter. The deed, if void, was color of title. The acceptance of a deed from Payne by Eggleston did not operate to change his relation to the complainants. That transaction could not establish a co-tenancy between complainants and Eggleston. The latter had taken possession long before this under his deed, and was claiming the entirety. I submit that the sale by the commissioner was not void, even if lapse of time has not confirmed it.

COOPER, J., delivered the opinion of the court.

The effect of the decree made upon the petition of Payne against the heirs at law of Alsobrook, for sale of the lands for partition, was to conclusively settle the equitable right of Alsobrook's heirs to one-half of the lands therein described.

There was no lawful execution of that decree by Davidson, the commissioner appointed to make the sale. He was required by law to make sale of the lands upon credit of six months, and to take bond with security from the purchaser in double the amount of the purchase-money, and it was his

duty to make report of his action at the next term of the court. But he substituted his own will for that of the law, of which the purchaser was bound to take notice, and received Confederate money as payment for the land, which he retained in his hands until after the overthrow of the Confederacy, and then, and not till then, reported to the court his action in the premises, and brought into court the worthless funds. This report was promptly met by proper and just exceptions, after which no action was taken either on the report or the exceptions thereto.

Counsel for appellee say that the exceptions were abandoned, but we find no evidence thereof in the record. The commissioner had no authority to receive the money, and, though it was paid to him, he held it as the mere depositary of the purchaser. *State* v. *Cox*, 62 Miss., 786.

Confirmation by the court, or by the act of the parties, was essential to give validity to the sale and conveyance. *Henderson* v. *Herrod*, 23 Miss., 434; *Sanders* v. *Dowell*, 7 Smed. & M., 206; *Gowan* v. *Jones*, 10 *Ib.*, 164.

The office of exceptions to a report of sale, is to prevent confirmation; and when a report of sale is made, and exceptions thereto are filed, and no further steps are taken, the inference is that the sale, and not the exception, is abandoned.

There is no evidence of a confirmation *in pais*. The purchaser paid nothing for the land. He placed certain currency in the hands of *his depositary*, the commissioner, to be used for that purpose, but the owners of the land refused to receive it, and repudiated the sale.

Eggleston, the purchaser, seems to have appreciated his condition, for, four years after the commissioner's sale, he purchased the undivided one-half interest of Payne in the land, and accepted a conveyance thereof from him, which conveyance was promptly recorded.

The deed from the commissioner seems never to have been recorded, and, so far as complainants are shown to have known, he never claimed any interest thereunder, after their

exceptions were filed.    We find nothing in the record from which an affirmance by the parties could be inferred.

There is no sufficient evidence of an ouster of complainants from the land, and an adverse holding by Eggleston. His entry upon the land, and deadening one hundred acres of timber thereon, and building two cabins there, were before the exceptions to the report had been filed; and doubtless this action on his part was upon the expectation that the sale would be confirmed.   But, three years after this, he recognized the title of Payne to one-half of the land, and, inferentially, that of complainants to the other interest. After he had acquired Payne's title, he was, in law, entitled to hold the land, and the presumption is that he held in recognition of the right of his co-tenants.   Until notice was brought to them of the fact that their title was denied, they might rely upon the presumption that it was recognized. The lands are wild and unoccupied (except forty acres sold by Eggleston to one Wade, less than ten years before this suit was commenced), and payment of taxes and claim of ownership was not sufficient evidence of an ouster, nor of adverse holding by Eggleston.   The complainants were entitled to relief.

*The decree is therefore reversed and cause remanded.*