691 F.2d 715
 Henry G. MILLS, et al., Plaintiffs-Counterdefendants-Appellees,
v.
DAMSON OIL CORPORATION, et al., Defendants-Cross Defendants, Appellees,
J. S. Wheless, Jr., et al.,
Defendants-Counterplaintiffs-Cross Plaintiffs-Appellants.
 No. 81-4048.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 2, 1982.
 
 Charles G. Copeland, Harry E. Neblett, Jr., Jackson, Miss., for defendants-counterplaintiffs-cross plaintiffs-appellants.
 Stanford Young, Waynesboro, Miss., for Mills.
 Ed Brunini, Jr., Jackson, Miss., for Damson.
 Matthew Harper, Jr., Laurel, Miss., for SE Oil.
 Appeal from the United States District Court for the Southern District of Mississippi.
 ON PETITION FOR REHEARING
 Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Appellants have filed a petition for rehearing of our prior decision. Although we believe the petition is without merit, we briefly address the two contentions raised therein so that the Supreme Court of Mississippi, to which we have certified what appear to us to be dispositive, unresolved questions of Mississippi law, may have available our conclusions regarding these contentions.
 
 
 2
 Appellants first contend that S.B. Daws's testimony constitutes insufficient evidence to support the district court's fact-finding that Glasco, appellant Wheless's purchasing agent, had actual notice of the Dawses' claim before payment of the consideration for the subsequent Wheless Deed. The Daws Deed is dated October 16 and was recorded October 22 (our prior opinion at one place erroneously gives October 23 as the recordation date), while the Wheless Deed is dated October 17 and was recorded October 25. Daws testified that Glasco approached Daws at the Chancery Clerk's office, where Daws worked, sometime on or after October 22 and before October 25. Daws stated:
 
 
 3
 "A. Mr. Glasco had a deed purportedly signed by Claude Mills and Sue Betty Mills and a draft, and he said Mr. Mills told him to give me the draft, it belonged to me. I told him no way, I didn't want it.
 
 
 4
 "Q. Told him to give you the draft, that what belonged to you?
 
 
 5
 "A. The draft.
 
 
 6
 "Q. Yes, sir.
 
 
 7
 "A. For the purchase of minerals that he had attempted to purchase."
 
 
 8
 Daws's testimony further reflects that Glasco tried to get him to take the draft, and that after Daws showed Glasco the recorded Daws Deed, in which Lurline Daws was the grantee, Glasco again asked that Daws take the draft and have Lurline Daws sign the Wheless Deed. Glasco put the Wheless Deed on the counter and Daws saw that it was executed but not witnessed or notarized.[1] "Accompanying" the Wheless Deed was a draft.
 
 
 9
 We think it a fair inference from this testimony that Daws observed in Glasco's possession the draft by which payment was to be made to the Millses for the Wheless Deed. We also believe that Daws's testimony respecting Glasco's statements was admissible. Glasco, who died before trial, was Wheless's agent to acquire the property, and was acting as such in his dealings with the Millses and Daws. Glasco's statements to Daws, respecting the draft Glasco had with him and as to what Mills told Glasco, were made as a part of Glasco's carrying out of his duties for Wheless. These statements were necessary to explain to Daws why Glasco wished him to take the draft and have Lurline Daws sign the Wheless Deed. The statements also related to Glasco's performance of his duties for Wheless in respect to Mills. The statements were accordingly admissible against Wheless and those holding under him. See Fed.R.Evid. 801(d)(2)(D); 4 Wigmore, Evidence §§ 1078, 1080 (Chadbourn rev. 1972); Cox v. Esso Shipping Co., 247 F.2d 629, 632-33 (5th Cir. 1957); United States v. Iaconetti, 540 F.2d 574, 577 (2d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). Moreover, it would appear that when talking to Daws Glasco likely had a sufficient interest in successfully completing his mission for his principal so that Glasco's statement that Mills in effect told him Mills had conveyed the land to Daws was such that "a reasonable man in his (Glasco's) position would not have made the statement unless he believed it to be true." See Fed.R.Evid. 804(b)(3). Of course, this relates to the fact of Mills having made such a statement to Glasco, not to the truth of what Mills said. Finally, Glasco's statements reflect his knowledge and state of mind when they were made to Daws and, by inference, prior thereto, when he dealt with Mills. See Fed.R.Evid. 803(3); McCormick, Evidence § 294 at 695-96 (2d ed. 1971).[2]
 
 
 10
 Appellants rely on Covington v. Butler, 242 So.2d 444 (Miss.1970), but their reliance is misplaced, for that decision did not concern proof of knowledge on the issue of bona fide purchaser status. Rather, that case involved an attempt to cancel a deed on the ground that the consideration was never paid. Moreover, the decision on that point turned on an entirely different ground.[3]
 
 
 11
 Accordingly, we reject appellants' contention that there was insufficient evidence to support the district court's finding of fact that Wheless's agent in the premises, Glasco, had actual notice of the Daws Deed before payment of the consideration for the Wheless Deed. The finding was not clearly erroneous.
 
 
 12
 Appellants' remaining contention is that the recitals in the deeds to appellant Trotter, as Executor and as Trustee, established payment of valuable consideration for purposes of the recording statutes. These recitals are set out in notes 8 and 9 of our prior opinion. Appellants rely on the cases of Exum v. Canty, 34 Miss. 533 (1857), and Fairley v. Fairley, 34 Miss. 18 (1857). Neither case is in point, for the question in each was whether the deed was void for want of consideration, not whether the consideration was "valuable" in the sense of affording protection under the recording statutes. In Exum, the court refused to declare the deed "invalid" for want of consideration, noting that it recited a "consideration of services rendered to the grantor before its execution, and to be continued to him during his life. That is clearly a valuable consideration." Id. at 568. Cf. Houser v. Houser, 251 Miss. 209, 168 So.2d 801, 805 (1964). No such recital is present in the deeds to Trotter, so even if the Exum case had concerned protection under the recording statutes it would still not be in point. Fairley was a suit by administrators of a decedent's estate, and the issue was whether a deed executed by a witness for the plaintiffs was void so that the witness still had an interest in the estate which would disqualify him from testifying. The consideration recited in the deed was "natural love and affection, and the further consideration of one dollar," and this was held to be "both a good and valuable consideration" such that the deed was "valid." Id. at 20. The deeds to Trotter, by contrast, recite no monetary consideration whatever. In any event, Fairley did not involve protection under the recording statutes, and years after that decision the Supreme Court of Mississippi held that although one dollar was a sufficient consideration to uphold the validity of a deed, it was not "a valuable consideration" such as to afford the grantee the protection of the recording statutes. See Smith County Oil Co. v. Jefcoat, 203 Miss. 404, 33 So.2d 629, 632 (1948) (en banc).[4]
 
 
 13
 Accordingly, we reject appellants' contention that the recitals in the deeds to Trotter established that Trotter was a subsequent purchaser for a valuable consideration within the meaning of the recording statutes.
 
 
 14
 Appellants' Petition For Rehearing is therefore DENIED.[5]
 
 
 
 [1]
 As recorded on October 25, the Wheless Deed bears the purported signature of Glasco as subscribing witness and is acknowledged by him in that capacity
 
 
 [2]
 "Although it is required that the declaration describe a state of mind or feeling existing at the time of the declaration, the evidentiary effect of the declaration is broadened by the notion of the continuity in time of states of mind.... Continuity may also look backwards. Thus, when there is evidence that a will has been mutilated by the maker, his subsequent declarations of a purpose inconsistent with the will are received to show his intent to revoke it at the time he mutilated it. Similarly, whether payment of money or a conveyance was intended by the donor as a gift may be shown by his declaration made ... after the act or transfer." (Footnotes omitted.)
 
 
 [3]
 In Covington, the court held:
 "It is not contended that the conveyance by McCarra was not a voluntary action on his part and there is no allegation that he was induced to sign the deed by fraud and the sole ground upon which appellant seeks to set aside the deed is the failure of consideration. It is well settled law in this state that in the absence of fraud, a voluntary conveyance of land cannot be set aside at the instance of the grantor because of failure of consideration. In Campbell v. State Highway Commission, 212 Miss. 437, 54 So.2d 654 (1951), we said:
 'The contention that appellants' land is being taken without consideration is not well founded as, in the absence of fraud, a voluntary conveyance of land can not be vacated at the instance of the grantor upon the ground that it was made without any consideration. In Longmire v. Mars, et al., 124 Miss. 77, 86 So. 753, 754, the court held: "A total failure of consideration for a voluntary conveyance, in the absence of fraud, is no ground for a cancellation of the deed. This has been repeatedly decided by this Court." ' " 242 So.2d at 447.
 
 
 [4]
 In that case the Supreme Court, citing numerous decisions, stated:
 "It is conceded that Hughie D. Jefcoat, the father and grantor of H.P. Jefcoat, paid only the sum of $1 in 1934 for the quitclaim deed to the SE 1/4 of the SW 1/4 and other lands. This was a good and valid consideration, but not a valuable consideration within the meaning of this registry statute. Although a good consideration, it was merely a nominal one and such as would not entitle the grantee therein to the benefit of this registry statute, as 'a subsequent purchaser for a valuable consideration' as against the unrecorded prior conveyance in favor of the appellant Smith County Oil Company, which appears to have been executed for a valuable consideration." 33 So.2d at 632.
 
 
 [5]
 No further Petition for Rehearing respecting our prior opinion and order, or respecting this opinion and order, shall be entertained